UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNER PATRICK SHOOP,

          Petitioner,

      v.

RON VAN BOENING,

          Respondent.

Case No. C06-5523 RBL/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:
April 6, 2007**

      This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636 (b) and Local MJR 3 and 4.  Petitioner seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Dkt. # 4).   Respondent has answered (Dkt. # 14) and Petitioner has replied (Dkt. # 16).  This matter is now ripe for review.   After careful review, the undersigned recommends that the petition be denied with prejudice.

## I.  BASIS FOR CUSTODY

      Petitioner is in custody of the Washington Department Corrections (DOC) pursuant to his 2004 convictions, by plea on May 19, 2004 to the separate charges of second-degree assault (filed in 2003) and residential burglary (filed in 2004) (both with deadly weapons enhancements).  (Dkt.

REPORT AND RECOMMENDATION- 1

# 15, Exhs. 1, 2).  The Petitioner is challenging his conviction in the second-degree assault case only.

## II.  STATEMENT OF THE CASE

**A.     Statement of Facts**

     The State of Washington's declaration for determination of probable cause summarized the facts of the second-degree assault case as follows:

> That in Pierce County, Washington, on or about the 19th day of August, 2003, the defendant, JENNER PATRICK SHOOP, did commit the crime of Assault in the Second Degree.
>
> At approximately 6:00 p.m., Timothy Lauzon and Alex Bolvin went to 9418 Glen Cove Rd KPN, Vaughn, Washington, to contact the defendant. The defendant owed Bolvin $30.00 and had borrowed a motorcycle from Lauzon. The defendant apologized to Bolvin for not having the money that he owed him and told Lauzon that he had sold the motorcycle, but did not have any money to show for it. The defendant and Lauzon began to argue. The defendant walked back inside the residence and came back to the door moments later with a baseball bat. He slammed the bat against an object on the porch and continued to argue with Lauzon. The defendant then swung the bat in an attempt to strike Lauzon but Lauzon was able to grab the bat and hold it with his left hand. The defendant produced a knife with his left hand and attempted to stab Lauzon, who lifted up his right arm in an attempt to shield his face and head. The defendant stabbed Lauzon on the outer portion of his right forearm, severely lacerating the arm. Lauzon dropped the bat, turned and ran down the road with the defendant chasing him with the bat. Bolvin ran to his truck, drove down the road and picked up Lauzon. The police were called. Lauzon was transported to Tacoma General Hospital for treatment of his injuries. Deputies attempted to locate the defendant, who had fled on foot, but were unable to do so.

(Dkt. # 15, Exhs. 4).

**B.     State Court Procedural History**

     On May 3, 2005, Petitioner filed his personal restraint petition, raising the following grounds for review:

> 1)  The Superior Court errored [sic] in Violation of petitioners 6th Amendment right due to the Ineffective Assistance of Counsel.   AMENDMENT VI (6) "Right to Speedy trial, witnesses, etc."  In all criminal prosecutions, the accused shall enjoy the

REPORT AND RECOMMENDATION- 2

right to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

2)  The Superior Court also violated Petitioners Due Process rights of the 5th and 14th Amendments. AMENDMENT V (5) "Right of accused in criminal proceedings." No person shall be compelled in any Criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of Law.  AMENDMENT XIV (14) "Citizenship rights not to be Abridged by the State."  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of Life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.

A. 1)   The victim came to my home to collect a debt. Evidence 1[B]

2)      The victim became aggressive and argumentative. Evidence 1[B]

3)      After the incident occurred I followed the aggressor off the property and stopped.  This is in the handwritten statement form Alex Bolvin taken by Pierce County sheriff.  Alex is the friend of the victim.  This statement was in the file.  Evidence 1[B]

B.1)   In the file, my first attorney Karen Lundahl sent a memo to Jim Harris of Harris Investigations saying, "this would seem to be a self-defense case." Evidence 1[A]

2)      In the file, interview after interview of facts like, the victim Tim Lazone had been escorted off the property and told not to come back this is in the interview with Rick Sorrels and Jan Shoop. Evidence 3 & 4[A]

3)      I never attacked the victim and I only armed myself after I felt threatened. The victim approached me and pushed me to the ground with a closed fist and got cut on the top of his forearm.  Evidence 4[B] and recorded statement of Alex Bolvin.

2)      Chandola's only advice, "ever" was to except the ASLT2 charge because it carried less time then the charge for RES burg in which I was facing 63 months or better, and with the two crimes being run concurrent, (aside from the weapon's enhancements) the "one would be swallowed up by the other."

         Having never seen any statements any my counsel only a couple times, I feel as though I was duped into the plea agreement by my own counsel.

3)      He had explosive evidence in the file. My wife, after 7 months of phone calls and letters from the both of us, received the files only after promising to call

REPORT AND RECOMMENDATION- 3

the bar association. (See Evidence 5[B&C])

I knew he was in possession of some statements but only now after reading them myself am I truly mystified.

He made no effort in utilizing any strategy, statement or piece of evidence in my defense. Had he attempted to defend me and had he proved successful, I would be serving one less enhancement of 12 months and my point range would have been lower by one point making my offender score eight instead of nine on the RES burg bringing down to 53 months instead of 63 months, not to mention the fact that I now have a violent crime and a strike on my record.

(Id., Exh. 5, p. 16-18).

The Court of Appeals dismissed the petition as frivolous.  (Id., Exh. 6).  Petitioner filed a

motion for discretionary review.  (Id., Exh. 7).  Petitioner raised the following grounds for review:

1)   The superior court violated petitioner's Sixth Amendment rights to effective assistance of counsel.

2)   Petitioner's rights to a speedy trial, and to present witness in his behalf, were violated by the trial court in violation of the Sixth Amendment.

3)   The trial court violated petitioner's Fifth, Sixth and Fourteenth Amendment rights to due process and denied effective assistance of counsel.

4)   No person shall be compelled in any criminal case to give evidence against himself.

5)   No state shall make a law or enforce any law which shall abridge the rights and privileges or immunities of citizens of the United States; nor shall any state deprive any person or life, liberty, or property, without due process of the law.

6)   Ineffective assistance of counsel. Counsel failed to inform defendant of all legal and discovery pertaining to the case.

7)   Ineffective assistance of counsel. Counsel failed to investigate and violated the Sixth Amendment.

8)   Ineffective assistance of counsel. Counsel misinformed, mislead, and coerced defendant into pleading guilty to a crime he did not commit.

REPORT AND RECOMMENDATION- 4

1
2
    9)    Counsel had defendant confess to a crime he did not commit, and to state to the court a weapon that was not used.

3 (Id., Exh. 7 at 5).

4     The Supreme Court denied review.  (Id., Exh. 8).  Petitioner moved to modify.  (Id.,

5 Exh. 9).  Petitioner presented the following grounds for review:

6

7     1)    The Superior Court erred in violation of Petitioners 6th Amendment right due to the Ineffective Assistance of Counsel.  AMENDMENT VI (6)  In all
8 criminal prosecutions, the accused shall enjoy the right to have compulsory process for obtaining witnesses in his favor, and to have the assistance of
9 counsel for his defense.

10     2)    The Superior Court also violated Petitioners Due Process rights of the 5th and
11 14th Amendments.  AMENDMENT V (5)  No person shall be compelled in any Criminal case to be a witness against himself, nor be deprived of Life,
12 liberty, or Property, without Due Process of Law.  AMENDMENT XIV (14) No state shall make or enforce any law which shall abridge the privileges or
13 immunities of citizens of the United States of America; nor shall any state deprive any person of Life, Liberty, or Property, without Due Process of Law;
14 nor deny to any person within its jurisdiction the equal protection of the law.

15
16 (Id. at 5).

17     On September 7, 2006, the Supreme Court denied Petitioner's motion to modify.  (Id., Exh.

18 10).

19 ## III.  ISSUES PRESENTED

20     Petitioner presents this Court with the following grounds for relief in his federal habeas
21
22 petition:

23     1)    Violation of my United States Constitutional right to have Compulsory Process for obtaining witness in my favor, and to have the effective assistance
24 of counsel for my defense under the 6th Amendment.

25     6a (a) Supporting Facts: On March 25, 2004, counsel for the defense is scheduled for an Omnibus Hearing with the accused. Counsel for the defense
26 is cited as, "having other Matters," by Attorney Bar #33758. The Hearing is rescheduled for March 31, 2004, at which time counsel for the defense is
27

28 REPORT AND RECOMMENDATION- 5

again not present. The Hearing is again rescheduled for April 13, 2004. On April 13, 2004, counsel for the defense cites himself as unprepared and asks the court for a continuance. The court again rescheduled for April 27, 2004. The accused does not receive an Omnibus Hearing. The victim gave a statement accusing the defendant, it was the victims accusation in which the accused was arrested and charged. Counsel for the defense of the accused, denied the accused his assistance when counsel did not attend even one of the many court ordered Omnibus hearings except to say, he is unprepared and unable to assist the accused in his defense. The purpose of this Hearing is to prepare for trial or plea and to determine the extent of discovery to be granted to each party. Counsel for the accused was in possession of several statements to include a statement from witness to the incident Alex Bolvin.

These statements call into question the accusers accusations. At the Omnibus Hearing the prosecution must disclose evidence in its possession favorable to the defendant on the issue of guilt. Its not the duty of the prosecution to disclose such evidence. It's the duty of counsel for the defense to assist the accused in obtaining any such evidence. Due to counsels failure to assist the accused in initiating, let alone completing any kind of discovery, the accused became helpless against the victims accusations and the charges set in motion by the prosecution. Counsel for the defense denied the accused his Constitutional right to Compulsory process for obtaining witness in his favor and rendered no assistance for the defense of the accused, violating the accused's 6th Amendment rights.

2)    Violation of my United States Constitutional right to Due Process of law under the 5th Amendment thereto.

March 25, 2004. Denied Omnibus Hearing. New Hearing set for March 31, 2004. I am again denied Omnibus Hearing. New hearing set for April 13, 2004. I am again denied Omnibus Hearing. New hearing set for April 27, 2004. I am again denied Omnibus Hearing. New hearing set for April 29, 2004, I am completely denied everything but the opportunity to plea guilty.

3)    Violation of my United State Constitutional right that states; no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of Life, Liberty, or Property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws under the 14th Amendment.

9a (a) Supporting Facts: Through the actions of counsel for the defense, the accused was denied his Constitutional right to due process of law. The Omnibus Hearing is essential, in relation to due process of law. Its purpose is to prepare for trial or plea, and to determine the extent of discovery to be

REPORT AND RECOMMENDATION- 6

granted to each party. Without this essential right to due process, nothing stands between the accused and imminent prosecution. Denial of an Omnibus Hearing because the accused cannot produce counsel for his defense is a kind of double jeopardy. The accused being ignorant of the law, and his rights, depends upon his counsel for his defense, and the provision of equal protection of the law. If this is not being provided, by counsel to the accused, it is at the Omnibus Hearing that the court ensures that standards regarding provision of counsel are complied with. Without the Omnibus Hearing the accused stands alone at the mercy of the prosecution and a defense attorney who wishes only to secure a plea. In this instance the accused is denied counsel for his defense, denied his Omnibus Hearing, denied his due process sand the equal protect ion of the law, violating the accused's 14th Amendment rights.

(Dkt. # 4, pp. 9-15).

## IV. <u>EXHAUSTION OF STATE REMEDIES</u>

In order to satisfy the exhaustion requirement, Petitioner's federal claims must have been fairly presented to the state's highest court.  <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1086 (9th Cir. 1985).

As is more fully discussed below, Petitioner failed to properly exhaust his second and third claims for relief.  In addition, Petitioner's claims are now procedurally barred under Washington Statutes RCW 10.73.090 (one-year statute of limitations bar) and 10.73.140 (prohibition of filing of multiple collateral challenges), and these claims are not cognizable in federal court absent a showing of cause and prejudice or a fundamental miscarriage of justice.

## V.  EVIDENTIARY HEARING

In a proceeding instituted by the filing of a federal *habeas corpus* petition by a person in custody pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The Petitioner has "the burden of

REPORT AND RECOMMENDATION- 7

1  rebutting the presumption of correctness by clear and convincing evidence." Id.

2      Where a Petitioner "has diligently sought to develop the factual basis of a claim for habeas

3  relief, but has been denied the opportunity to do so by the state court," an evidentiary hearing in

4  federal court will not be precluded.  Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir. 1999), cert.

5  denied, 120 S.Ct. 798 (2000) (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998)).  If

6  the Petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an

7  evidentiary hearing on that claim shall not be held, unless the petitioner shows: (A) the claim relies

8  on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

9  Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously

10  discovered through the exercise of due diligence; and (B) the facts underlying the claim would be

11  sufficient to establish by clear and convincing evidence that but for constitutional error, no

12  reasonable factfinder would have found the applicant guilty of the underlying offense.  28 U.S.C. §

13  2254(e)(2).

14      An evidentiary hearing is not required on issues that can be resolved by reference to the state

15  court record."  Id. (emphasis in original).  "It is axiomatic that when issues can be resolved with

16  reference to the state court record, an evidentiary hearing becomes nothing more than a futile

17  exercise." Id.; United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986) (quoting 28 U.S.C. § 2255).

18  Petitioner is not entitled to an evidentiary hearing in this Court because, as is discussed below, there

19  is no indication "that an evidentiary hearing would in any way shed new light" on the grounds for

20  federal habeas corpus relief raised in the petition and the issues raised by Petitioner may be resolved

21  based solely on the state court record.

REPORT AND RECOMMENDATION- 8

1

## VI.  STANDARD OF REVIEW

2

3
    Federal courts may intervene in the state judicial process only to correct wrongs of a

4
constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  28 U.S.C. § 2254 is explicit in that a

5
federal court may entertain an application for writ of habeas corpus "only on the ground that [the

6
petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28

7
U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal habeas corpus relief

8
does not lie for errors of state law.  Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S.

9
37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

10
    Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated

11
on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was

12
contrary to, or involved an unreasonable application of, clearly established federal law, as determined

13

14
by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination

15
of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).   A

16
determination of a factual issue by a state court shall be presumed correct, and the applicant has the

17
burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C.

18
§2254(e)(1).

19

20

## VII.  DISCUSSION

21
**A.**      **Exhaustion and Procedural Default of Second and Third Claims**

22
    In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly

23
presented to the state's highest court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v.

24
Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).   A state prisoner must exhaust state remedies with

25
respect to each claim before petitioning for a writ of habeas corpus in federal court.  Granberry v.

26

27
Greer, 481 U.S. 129, 134 (1987).  It is the petitioner's burden to prove that a claim has been

28
REPORT AND RECOMMENDATION- 9

properly exhausted and is not procedurally barred. <u>Cartwright v. Cupp</u>, 650 F.2d 1103, 1104 (9th Cir. 1981).  It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state law claim was made.  In order to exhaust the federal habeas claim, petitioner must have fairly presented to the state courts the substance of his federal habeas claim. <u>Anderson v. Harless</u>, 459 U.S. 4, 6-7 (1982) (citations omitted). The petitioner must present the claims to the state's highest court, even where such review is discretionary. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

Respondent argues that Petitioner failed to properly exhaust his second and third habeas claims of the alleged denial of an omnibus hearing.

A careful review of Petitioner's state court filings reveals that Petitioner does not raise the denial of an omnibus hearing as an issue in his personal restraint petition.  To the extent the hearing is mentioned at all, it is in connection with Petitioner's recitation of the proceedings involved in his case, where he complains of his counsel's failure to appear, preparedness and the need to reschedule the hearings.  (<i>See</i> <u>Id</u>., Exh. 5, Attachment to Page 3, Question 8).   The Court of Appeals noted Petitioner's claims that his counsel had missed some omnibus hearings and did not sufficiently meet with him in jail, but noted that this was "part of his broader claim that [his counsel] merely pushed him into a plea bargain without discussing or pursuing a self-defense claim based on the investigator reports in his file." (<u>Id</u>., Exh. 6 at 4-5 n. 3).  Petitioner does not raise the denial of an omnibus hearing as an issue in his motion for discretionary review in the Washington Supreme Court, but discusses the failure of his counsel to push for "evidentiary hearings [and] omnibus hearings," in the "Statement of the Case" portion of his motion.  (<u>Id</u>., Exh.7 at 9 (marked as p. 4 by Petitioner)).

Petitioner raises the denial of an omnibus hearing as an issue for review for the first time in his motion to modify the Supreme Court Commissioner's rulings.  (<u>Id</u>., Exh. 9 at 8-9).

REPORT AND RECOMMENDATION- 10

To give state courts an opportunity to properly address his claims, however, Petitioner would have had to present them, as federal constitutional violations, at every level of state courts' review and he has not done so.   *See* Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992) (a petitioner must properly raise a habeas claim on every level of direct review in order to properly exhaust).

> To provide the State with the necessary "opportunity' [to pass upon and correct alleged violation of state prisoner's federal rights] the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), . . . alerting that court to the federal nature of the claim.

Baldwin v. Reese, 124 S. Ct. 1347, 1349 (2004) (emphasis added) (citations omitted).

Accordingly, because Petitioner's second and third habeas claims were not presented as federal constitutional violations in the Washington Supreme Court, such claims are unexhausted, *see* Duncan v. Henry, 513 U.S. 364, 365-66 (1995), and should be dismissed.

**B.    Dismissal of Unexhausted Claims**

Federal courts "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." Rhines v. Weber, 125 S. Ct. 1528, 1532-33 (2005).  Instead, such petitions "must be dismissed for failure to completely exhaust available state remedies." Jefferson v. Budge, 419 F.3d 1013, 2005 WL 1949886 *2 (9th Cir. 2005) (citing Rose v. Lundy, 455 U.S. 509, 518-22 (1982)).

As Petitioner's second and third grounds for seeking federal *habeas corpus* relief have not been fully exhausted, Petitioner has presented a mixed petition containing both exhausted and unexhausted federal claims, which, in itself requires dismissal of the petition.  Before doing so, generally the Court is required to provide Petitioner with "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted

REPORT AND RECOMMENDATION- 11

claims to the district court." Id.; see also Rhines, 125 S. Ct. at 1535; Tillema v. Long, 253 F.3d 494, 503 (9th Cir. 2001) (court must provide *habeas corpus* litigant with opportunity to amend mixed petition by striking unexhausted claims).  This is not so, however, where the Petitioner would be procedurally barred from returning to state court to address the unexhausted claims.

The record in this case reflects that Petitioner's second and third claims are now procedurally barred.   Because Petitioner's convictions are based on guilty pleas, Petitioner could not directly challenge them and he has already completed a round of state court challenges. Thus, Washington Statutes RCW 10.73.090 (one-year statute of limitations bar) and 10.73.140 (prohibition of filing of multiple collateral challenges) prohibit him from returning to the Washington state courts and filing a new personal restraint petition where he could present these claims as federal constitutional violations.   RCW 10.73.140 and RAP 16.4(d) bar the filing of successive petitions and petitions raising new claims absent a showing of good cause.  Unless Petitioner can show good cause, the state court will deny any petition he now files under RCW 10.73.140. Shumway v. Payne, 136 Wn.2d 383, 398-99, 964 P.2d 349 (1998).


**C.**     **Petitioner Cannot Show Cause and Prejudice Or Fundamental Miscarriage of Justice**

Unless it would result in a "fundamental miscarriage of justice," a petitioner who procedurally defaults may receive review of the defaulted claims only if he demonstrates "cause" for his procedural default and "actual prejudice" stemming from the alleged errors. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show "cause," the petitioner must show that some objective factor, external to the petitioner, prevented compliance with the state's procedural rule. Id. at 753.   "The fact that [a petitioner] did not present an available claim or that he choose to pursue other claims does not establish cause." Martinez-Villareal v. Lewis, 80 F.3d 1301, 1306

REPORT AND RECOMMENDATION- 12

(9th Cir. 1996).

A petitioner can demonstrate "cause" by showing interference by state officials, the unavailability of the legal or factual basis for a claim, or constitutionally ineffective assistance of counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner cannot demonstrate cause to excuse a procedural default where the cause is fairly attributable to the petitioner's own conduct. McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992). A petitioner's own inadequacies and lack of expertise in the legal system do not excuse a procedural default. Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 907-09 (9th Cir. 1986).

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Wood v. Hall, 130 F.3d  373, 379 (9th Cir. 1997) (quoting Murray v. Carrier, 447 U.S. 478, at 496). "To meet this manifest injustice exception, [the petitioner] must demonstrate more than that 'a reasonable doubt exists in the light of the new evidence.'" Wood, 130 F.3d at 379 (quoting Schlup v. Delo, 513 U.S. 298, at 329 (1995)). The petitioner must also "make a stronger showing than that needed to establish prejudice," Schlup, 513 U.S. at 327. "[T]he petitioner must show that is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id.

Petitioner has not provided the court with any evidence of cause and prejudice or a fundamental miscarriage of justice. Because he cannot excuse his procedural default, his second and third habeas claims are not cognizable in this federal habeas corpus proceeding.

**D.** **Petitioner's First Ground for Relief Must be Denied as Trial Counsel Did Not Provide Ineffective Assistance of Counsel**

Petitioner's first ground for relief is based on claims of ineffective assistance of counsel.

REPORT AND RECOMMENDATION- 13

Petitioner must satisfy the two-part standard of Strickland v. Washington, 466 U.S. 668, 686

(1984), to support a claim of ineffective assistance of counsel.  First, the petitioner must show that

counsel's performance was so deficient that it "fell below an objective standard of reasonableness."

Id. at 686.  This burden is highly demanding, as the defendant must prove he was denied a fair trial

by the gross incompetence of counsel.  Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).

Second, the petitioner must show that the deficient performance prejudiced the defense so "as to

deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 687.

Unless the defendant's showing satisfies both parts of the analysis, "it cannot be said that the

conviction . . . resulted from a breakdown in the adversary process that renders the result

unreliable."  Id.  Because the petitioner must satisfy both prongs of the Strickland test, a court need

not address both prongs if the petitioner makes an insufficient showing of one prong.  Id. at 697.

Judicial review of an attorney's performance is "highly deferential and doubly deferential when it is

conducted through the lens of federal habeas."  Yarborough v. Gentry, 124 S. Ct. 1, 4 (Oct. 20,

2003).

        Under the first prong of the Strickland test, the question is whether counsel's assistance was

reasonable under the totality of the circumstances, viewed as of the time of counsel's conduct.

Strickland, 466 U.S. at 690. To succeed under the first prong, the petitioner must show the

attorney's conduct "reflect[s] a failure to exercise the skill, judgment, or diligence of a reasonably

competent attorney."  United States v. Vincent, 758 F.2d 379, 381 (9th Cir.), cert. denied, 474 U.S.

838 (1985).

There is a strong presumption that counsel's performance fell within the wide range of reasonable

assistance.  Strickland, 466 U.S. at 689.

        Under Strickland's second prong, to prove prejudice, petitioner must establish a "*reasonable*

REPORT AND RECOMMENDATION- 14

*probability* that, but for counsel's unprofessional errors, the results of the proceeding would have been different."  Woodford v. Visciotti, 537 U.S. 19, 22 (2002) (per curiam) (emphasis in the original) (citing Strickland, 466 U.S. at 694).  However, sheer outcome determination is not sufficient to make out a Sixth Amendment violation.  A proper prejudice inquiry focuses on whether counsel's errors or omissions rendered the proceeding fundamentally unfair or the result unreliable. Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Id. at 372.

The Strickland standard applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985).  Where a defendant is represented by counsel during plea process and enters a plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys on criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970). Per Hill, the first prong of Strickland in the plea context is "nothing more than a restatement of the standard of attorney competence already set in . . . *McMann v. Richardson*..." Hill, 474 U.S. at 58-59 (italics in the text). To satisfy Strickland's prejudice prong, defendant must show that "there is reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. When in a plea context,

> offender claims counsel failed to investigate or discover potentially exculpatory evidence, the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

Hill, 474 U.S. at 59.

REPORT AND RECOMMENDATION- 15

1

2

3   Petitioner alleges that his counsel's performance was below an objectively reasonable

4   standard of performance because his counsel had in his possession various records, including Alex

5   Bolvin's statement to the police, the transcript of Mr. Bolvin's interview with the investigator, and

6   other investigative records.  Petitioner alleges these records call into question the assault charges.

7   (Dkt. # 4, 10 (page marked as 6b by Petitioner)).

8   Petitioner attached these records to his personal restraint petition.  Attachment to Exhibit 5 is

9   the Handwritten Statement by Mr. Bolvin:

10
> . . .Then they [Mr. Lauzan and Mr. Shoop] started arguing and Tim [Lauzan] said I
> don't like the way you do business. Then Jener [Shoop] went inside and came back
> out w/a bat. <u>Jener hit the bat on a washer and said do you have problem Tim and then</u>
> <u>he took a swing at w/the bat Tim grabbed it then they both fell on to the porch then</u>
> <u>Jener's rt arm came around and the next thing I knew Tim rolled off porch bleeding</u> . .
> .

11

12

13

14   (Dkt. # 15, Exh. 5, Attach. Evidence 1B.)(emphasis added).

15   The transcribed interview with Mr. Bolvin conducted by the investigator hired by Petitioner is

16   consistent with Mr. Bolvin's written statement to the police.  (<u>Id</u>., Exh. 5, Attach. Evidence 5A, p. 1-

17   9).  Petitioner left the porch and spent some time rummaging around in the house "like he was

18   digging out something and just boxes flying everywhere."  (<u>Id</u>. at 5).  He then came out of the house

19   with a bat in his hand, which he smacked on the washer and said, "you don't like the way I do

20
21   business." (<u>Id</u>.at 6).  When the victim stepped forward, Petitioner swung the bat at him.  (<u>Id</u>.).  The

22   victim grabbed the bat and he and Petitioner fell down on the porch.  (<u>Id</u>.)   Mr. Bolvin stated he did

23   not see the knife in Petitioner's hand.  (<u>Id.</u> at 8).  However, the victim told him later that he was

24   stabbed and Mr. Bolvin noticed later that the victim had been cut.  (<u>Id</u>. at 8).

25
26   A fair reading of the written statement is that Petitioner was the first aggressor.  He left the

27   scene and returned to attack the victim with a bat and then with a knife.  Mr. Bolvin's written

28   REPORT AND RECOMMENDATION- 16

statement thus confirms that, although the victim was arguing with Petitioner, Petitioner attacked the victim first.  The interview of Mr. Bolvin conducted by Petitioner's own investigator does nothing to change the picture of Petitioner as the first aggressor.

Respondent argues that counsel's recommendation to plead guilty was objectively reasonable. If the case had gone to trial, Petitioner would most likely be convicted, based on the available records and the facts of the assault case.  His prior convictions included residential burglary, second-degree burglary and forgery.  (Id., Exh. 14).  Therefore, if Petitioner testified at trial, he would be impeached because those convictions involved crimes of dishonesty. Washington ER 609(a).

The record reflects that the investigation did not reveal anything that counsel could have used to present a viable self-defense strategy.  The witness statements supported the State's version that Petitioner was the aggressor and did not act in self-defense.  Accordingly, Petitioner cannot show he would have insisted on going to trial in the assault case rather than pleading guilty. Hill, 474 U.S. at 59.

The companion residential burglary case must also be considered in determining whether Petitioner has shown prejudice from the alleged failings of his lawyer.  Petitioner was initially charged with the first-degree burglary with a deadly weapon enhancement, second-degree assault, attempting to elude a pursuing police vehicle, and obstructing a law enforcement officer. (Id., Exh. 15).  As the result of his counsel's plea bargain negotiation, Petitioner was charged only with the residential burglary with deadly weapon enhancement. Had Petitioner gone to trial on the original charges he risked being convicted of four felonies, which would have significantly increased his standard sentencing range.  The plea bargain resulted in the State dropping first-degree burglary, second-degree assault, attempting to elude, and the obstruction of a law enforcement officer charges. Thus, rejecting the plea offer would mean conviction on the more serious four felonies **even if** the

REPORT AND RECOMMENDATION- 17

Court assumes that Petitioner would have been acquitted of the assault charge[1].

Accordingly, Petitioner cannot show prejudice as he cannot show that he would have insisted on going to trial in the assault case rather than pleading guilty.  Hill, 474 U.S. at 59.

The Washington Court of Appeals and Supreme Court denied Petitioner's ineffective assistance claim on the merits.  The Washington Court of Appeals held as follows:

> When a defendant or petitioner challenges a guilty plea based on a claim of ineffective assistance of counsel, he or she must meet the two-prong *Strickland v. Washington*[2] test. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366; 88 L. Ed. 2d 203 (1985); *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 780, 863 P.2d 554 (1993). Thus, Petitioner must first demonstrate that his lawyer's representation fell below an objectively measured standard of reasonableness. *Hill*, 474 U.S. t 57; *In re Pers. Restraint of Clements*, 125 Wn. App. 634, 646, 106 P.3d 244, *review denied*, 154 Wn.2d 1020, *cert denied*, 126 S. Ct. 745 (2005). To demonstrate prejudice, petitioner must show that his lawyer's "constitutionally ineffective performance affected the outcome of the plea process" by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *accord Riley*, 122 Wn.2d at 780-81.
>
> But a bare assertion by Petitioner that he would have insisted on going to trial does not meet the "reasonable probability" standard for demonstrating prejudice. *Clements*, 125 Wn. App. at 646-47; *see Riley*, 122 Wn.2d at 782. Instead,
>
> > In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial *will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea*. This assessment, in turn, will depend in

---

[1]The Washington Court of Appeals calculated the difference in sentences – by choosing to accept the offer, Petitioner pleaded guilty to two charges instead of four and received sentences totaling 87 months.  The sentence imposed thus represented a reduction of at least 36 months to as much as 159 months from the risk Petitioner faced if convicted of all charges.  It was also at least 24 months less than if he had been convicted only of the original charges in the second cause [burglary charges].  Had Petitioner not been sentenced at the same hearing, the sentencing court would have had discretion to impose consecutive sentences.  (Dkt. # 15, Exh. 6, at 7 & n.5).

[2]466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) [footnote in the text].

REPORT AND RECOMMENDATION- 18

large part on a prediction *whether the evidence likely would have changed the outcome of a trial*. Similarly, where the alleged error of counsel if a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on *whether the affirmative defense likely would have succeeded at trial*.

*Hill*, 474 U.S. at 59 (emphasis added); *accord Clements*, 125 Wn. App. at 646.

As with any ineffective assistance claims, this court "must indulge in a strong presumption that counsel's performance is within the broad range of reasonable professional assistance." *State v. McCollum*, 88 Wn. App. 977, 982, 947 P.2d 1235 (1997). And, because Petitioner must establish both prongs of the *Strickland-Hill* test, we can deny relief if he fails to prove one prong without the need to evaluate the other. *See Riley*, 122 Wn.2d at 780.

## FACTUAL BACKGROUND

Here, Shoop asserts that his lawyer, Varn Chandola, represented him in two separately filed causes, the second degree assault (cause 03-1-04115-9) he challenges and a residential burglary (cause 04-1-01100-2). He further asserts that a previous lawyer, Karen Lundahl, hired a private investigator to look for evidence of self-defense in the assault case. The investigator interviewed several witnesses: Petitioner, Jan Shoop (Petitioner's wife), Richard Sorrels (Petitioner's landlord and former step-father), and Alex Bolvin (present with victim at time of assault). Petitioner asserts that after taking over his defense, Chandola did not show him or inform him of the investigator's written report of these interviews.[3] Noting that the assault happened at his residence when the victim and Bolvin came there to collect a debt, Petitioner characterizes these reports as supporting a strong defense of self-defense because they show that the victim was confrontational, had a history of showing up unwanted, and had been previously told to leave Petitioner's residence.

Petitioner asserts that despite having evidence of a strong defense, Chandola merely urged him to plead guilty to both the assault and the residential burglary because the concurrent sentence for the assault would be subsumed within the sentence for residential burglary, except for the deadly weapon enhancements, which would be consecutive. Petitioner claims that had Chandola shown him the investigator's reports and discussed with him the potential for a self-defense verdict, he would not have pleaded guilty to the assault. Petitioner claims prejudice because without the assault conviction, his standard range for the residential burglary would have been lower and he

---

[3] Petitioner also asserts that Chandola missed some omnibus hearings and did not sufficiently meet with him in jail. This, however, is part of his broader claim that Chandola merely pushed him into a plea bargain without discussing or pursuing a self-defense claim based on the investigator reports in his file [footnote in the text].

would not have a conviction for a serious or "strike" offense. Petitioner does not claim that he would not have pleaded guilty to the residential burglary, nor does this petition challenge that conviction.

While partly correct, Petitioner's factual recitation omits a large number of crucial details, which are provided by the attachments to the State's response. The State originally charged Petitioner with only the second degree assault in cause 03-1-04115-9. Petitioner failed to appear for hearings in December 2003 and January 2004, and the trial court issued a warrant for his arrest. Petitioner's lawyer, Karen Lundahl, who had hired the investigator to explore Petitioner's self-defense theory, then withdrew in February 2004.

On March 4, 2004, Tacoma Police arrested Shoop for several new crimes, and on March 5, 2004, the State charged Shoop in cause 04-1-01100-2 with first degree burglary (with a deadly weapon enhancement), second degree assault, attempting to elude a pursuing police vehicle, and obstructing a law enforcement officer. The probable cause statement filed with this charge reveals that Shoop admitted participating in a burglary in which an accomplice was armed with a knife, admitted driving the get-away vehicle both when it deliberately rammed an occupied police car and thereafter, as it recklessly attempted to avoid capture. It also reveals that petitioner fled police on foot after the car finally stopped. A witness saw Petitioner and others break into the apartment, and a witness and police saw Petitioner removing items from the building. The police observed Petitioner's driving and the knife in the possession of one of the other burglary participants. The probable cause statement also reveals that Jan Shoop, a witness upon whom Petitioner now relies, (1) was present in the get-away car and (2) lied to the police about her identity and connection to Petitioner.

His previous lawyer having withdrawn when Petitioner failed to appear, the trial court appointed a new lawyer, Chandola, to represent Petitioner on both the original assault charge and the new set of more serious charges. Chandola filed his appearance in cause 04-1-01100-2 on March 8, 2004, and filed his appearance in the original cause (03-1-04115-9) on March 25, 2004.

Chandola's efforts on Petitioner's behalf then resulted in the State's offer to reduce the first degree burglary to residential burglary and to dismiss the remaining counts of 04-1-01100-2 if Petitioner pleaded guilty to the residential burglary and to the second degree assault in 03-1-04115-9, along with the deadly weapon enhancements on each charge. This offer had the effect of reducing Petitioner's offender score on the original second degree assault to "8," reducing his presumptive range from one of 63 to 84 months to one of 53 to 70 months. *See* RCW 9.94A.510, .515, .525. More significantly, by reducing the burglary charge, the offer reduced Petitioner's presumptive range for the burglary from one of 87 to 116 months to one of 63 to 84 months; the reduction also reduced the burglary deadly weapon

REPORT AND RECOMMENDATION- 20

enhancement from two years to one year.[4].  *See* RCW 9.94A.510, .515,. 525, . 533(4).

Without the offer, Petitioner faced the risk of conviction of four felonies, two of them most serious or "strike" offenses. *See* RCW 9.94A.030(28). If convicted after trial of all four, with the charged enhancements, Petitioner's standard range (including consecutive enhancements) if sentenced on both causes at the same hearing would have been 123 to 152 months. *See* RCW 9.94A.510, .515,. 525, . 533(4). If sentenced in separate hearings (likely if convicted in separate trials), Petitioner would have faced a sentencing range (including enhancement) on the original assault of 75 to 96 months which could have been *consecutive*[5] to a sentencing range (including enhancement) on the first degree burglary of 111 to 140 months, for a total of 186 to 246 months. *See* RCW 9.94A.510, .515,. 525, . 533(4), .589(1)(a),. 589(3). Even if acquitted in cause 03-1-04115-9 but convicted of all three felonies in cause 04-1-01100-2, Petitioner's standard range (with deadly weapon enhancement) would have been 111 to 140 months.

Petitioner chose to accept the offer, pleaded guilty to two charges instead of four,[6] and received sentences totaling 87 months. The sentence imposed thus represented a reduction of at least 36 months to as much as 159 months from the risk Petitioner faced if convicted of all charged. It was also at least 24 months less than if he had been convicted only of the original charges in the second cause, 04-1-01100-2.

### DEFICIENT PERFORMANCE PRONG

Petitioner's claim of ineffective assistance of counsel is premised on his assertion that Chandola failed to show him or discuss with him the investigative materials obtained by his earlier lawyer Lundahl. Petitioner's only support for this claim is his own unsworn claims in his petition; he has not included any sworn statement from Chandola or from anyone else to corroborate his assertion.

Moreover, Petitioner's claim that he did not know about the investigator or about the self-defense evidence in Chandola's file at the time of his guilty plea is suspect. As the material submitted by Petitioner makes clear, Lundahl (the earlier lawyer) hired the investigator because *Petitioner* told her that he had acted in self-

---

[4]The offer did not reduce Petitioner's offender score for the burglary because it was the maximum of "9" even without the additional assault and eluding convictions.  Without the offer, Petitioner's score on both the original assault and the burglary would have exceeded 9. [Footnote in text].

[5]The sentencing court would have had discretion to impose consecutive sentences if the two causes were not sentenced at the same hearing. *See* RCW 9.94A.589(1)(a), .589(3). [Footnote in text].

[6]The state charged Petitioner with one class A felony, two class B felonies, one class C felony, and one gross misdemeanor. RCW 9A.36.021(2)(a), .52.030(2), .76.020(3), 46.61.024(1). He pleaded guilty to two class B felonies only. RCW 9A.36.021(2)(a), .52.025(2). [Footnote in text].

REPORT AND RECOMMENDATION- 21

defense. The investigator contacted witnesses identified *by Petitioner*. The investigator *interviewed Petitioner* and his report of that interview is among the reports Petitioner now submits as documents of which he was unaware, purportedly because of Chandola's failings. Another of the interviews now submitted was with Jan Shoop, Petitioner's wife, with whom he has been and is in close contact. The investigator completed his reports while Lundahl was still representing Petitioner and before Petitioner failed to appear for court.

But this court need not (and does not) conclusively decide whether Petitioner has established the deficient performance prong, because he clearly fails to establish prejudice.

PREJUDICE PRONG

As noted above, in evaluating whether Petitioner has established prejudice from the purported failings of his lawyer, this court must determine whether the self-defense evidence he now submits would likely have succeeded at trial and whether it would have changed his lawyer's advice to accept the State's offer. First, the evidence submitted is not as strong as Petitioner apparently believes. Indeed, the investigator's interview with Bolvin, the only person other than Petitioner and victim present during the altercation, while establishing that the victim was angry and argumentative, also directly contradicts Petitioner by making it clear that victim did not touch Petitioner before he armed himself and that Petitioner then swung his weapon at victim before victim made any physical contact. Bolvin told the investigator that Petitioner responded to the victim's verbal confrontation by retrieving a baseball bat, banging the bat on a nearby washing machine, and swinging the bat hard at the victim. Bolvin did not see the knife, but saw the cut on the victim.

And the other statements submitted by Petitioner are even less helpful; neither Jan Shoop nor Richard Sorrels witnessed the altercation. Jan Shoop's statement does not establish that Petitioner knew of past acts of violence by the victim, but just that she felt the victim was an intimidating person and that he had come unannounced and unwelcome to her and Petitioner's residence in the past. And, of course, Ms. Shoop's testimony would not be very credible at trial, given her presence at Petitioner's burglary, her admitted lies to the police, and her relationship to Petitioner. Mr. Sorrels had a negative opinion of Petitioner and simply knew that he had told two apparent friends of petitioner (one of whom shared a first name with the victim) to leave Petitioner's residence in the past because he believed Petitioner and his friends to have criminal inclinations.

At a trial of the second degree assault charge, Petitioner would have been able to establish a basis for self-defense only with his own testimony; the State could then

REPORT AND RECOMMENDATION- 22

impeach him with his multiple prior crimes of dishonesty.[7]  *See* ER609(a). And, given the likely testimony of Bolvin, the State would have been entitled to a "first aggressor" instruction; a jury finding that Petitioner was the first aggressor would have completely defeated his self-defense claim. *See, e.g., State v. Wingate*, 155 Wn.2d 817, 821-23, 122 P.3d 908 (2005). This court cannot say that a self-defense claim based on the submitted statements would have likely succeeded.

Moreover, the more important question is whether a reasonable competent lawyer would have advised Petitioner to go to trial based on this self-defense evidence rather than accept the State's offer. The answer is clearly "No." Even is one assumes that the self-defense evidence made acquittal on the original assault charge likely (but not certain), rejecting the offer would mean facing near certain conviction on the much stronger and more serious second set of charges alone would have resulted in a longer standard range sentence, and if convicted in both causes, Petitioner potentially faced very lengthy consecutive sentences.

Because of the risks of trial for Petitioner, Chandola's advice to plead guilty to the State's offer was reasonable and competent, even giving full credit to the self-defense evidence. His advice guaranteed Petitioner concurrent sentences and secured a better result than if he had been acquitted for the assault he challenges but convicted of the well-supported original charges in the second cause. Petitioner benefited from Chandola's advice and he cannot establish prejudice.[8]

(Id., Exh. 6 at 2-10).

In its decision, the Washington Supreme Court held as follows:

Mr. Shoop first argues that the chief judge improperly "combined" his assault conviction with a residential burglary conviction (entered the same day under a separate cause number) by suggesting that, had Mr. Shoop gone to trial on the assault charge, one of the witnesses who purportedly would have supported his self-defense claim, Jan Shoop, would have been impeached by the fact that she was with Mr. Shoop in the car fleeing from the scene of the burglary and had lied to the police about her identity and her relationship with Mr. Shoop. Mr. Shoop urges that the circumstances of the burglary could not have been used to impeach the witness with respect to the assault because the burglary occurred several months after the assault. But for impeachment purposes, this does not matter. At trial on the assault, the State

---

[7]Taking a motor vehicle without permission, two forgery convictions, and (depending on the underlying crime), residential burglary, second degree burglary, and attempted burglary. *See* ER 609(a).  [Footnote in text].

[8]Moreover, as noted above, Petitioner was personally aware of the witnesses contacted by the investigator and of the nature of their statements, with or without discussion with Chandola. He could have insisted on going to trial based on that information, but shoe not to do so. His guilty plea statement specifically admits the intentional cutting of the victim with a knife. [Footnote in text].

REPORT AND RECOMMENDATION- 23

could have impeached the witness by any act she committed *prior to trial* that reflected negatively on her credibility. *See* ER 608(b). Contrary to Mr. Shoop's claim, this would not be an ex post facto violation.

Mr. Shoop also takes issue with the chief judge's discussion of the value of the plea deal in evaluating defense counsel's performance. The chief judge noted that, had Mr. Shoop gone to trial on both cause numbers, he would have risked conviction of two "strike" offenses; specifically, two second degree assaults. Mr. Shoop argues that the chief judge erred because second degree assault is not a "most serious offense" under the persistent offender statute. He is wrong. *See* RCW 9.94A.030(28)(b) (second degree assault a most serious offense).

Mr. Shoop next disputes the chief judge's observation that, had Mr. Shoop not agreed to plead guilty to one count of second degree assault, he would have faced "near certain conviction on the much stronger and more serious second set of charges." Mr. Shoop asserts that this observation is wrong because he faced no more serious a charge than second degree assault. But the chief judge plainly was referring to a more serious "set" of charges, not any single charge. Had Mr. Shoop not pleaded guilt to one count of second degree assault, he would have been tried additionally for first degree burglary with a weapon enhancement, attempting to elude a pursuing police vehicle, obstructing a law enforcement officer, and a second count of second degree assault. The chief judge therefore correctly characterized these charges as a more serious "set" of charges.

Mr. Shoop finally argues that the chief judge erroneously stated that only by his own testimony could Mr. Shoop have supported his self-defense claim. But the chief judge noted that the statement of the only witness to Mr. Shoop's altercation with the victim did not establish self-defense.[9] Mr. Shoop demonstrates no error.

In sum, Mr. Shoop does not show that the chief judge obviously or probably erred or departed from the usual course of proceedings. The motion for discretionary review is therefore denied.

(Id., Exh. 8 at 1-3).

This Court is not aware of any United States Supreme Court case that would, under the same factual scenario, render a result opposite to that reached by the Washington state courts. Thus, their adjudication of the claim on the merits cannot be contrary to, or an unreasonable application of,

---

[9]The chief judge made this remark in assessing the potential prejudice from any claimed deficiencies in defense counsel's performance. She noted that only Mr. Shoop's testimony would have supported self-defense ant that the State would have impeached Mr. Shoop with his prior crimes of dishonesty, making it unlikely that any self-defense claim would have succeeded. [Footnote in text].

REPORT AND RECOMMENDATION- 24

clearly established federal law, as determined by the United States Supreme Court. *See,* Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000).   Here, the record clearly reflects that Petitioner had an extremely thin self-defense case to the assault charge and that his counsel negotiated a plea-bargain in the companion case resulting in a lesser single charge of residential burglary from the original four felony charges.

Moreover, the record reflects that Petitioner voluntarily and intelligently pled guilty to the crimes of second degree assault and residential burglary with deadly weapon enhancements. On May 19, 2004, he signed his guilty plea on his residential burglary charge, stating:

On March 4th in Tacoma WA I entered a dwelling with intent to take property on 614 So. G St. and my accomplice had a knife.

(Id., Exh. 11).

On the same day, in Petitioner's written plea of guilty in the assault case he stated:

I got into a fight w/Tim Lauzan and intentionally cut him with a knife on Aug 19 2003 in Pierce Co WA.

(Id., Exh. 12).

During the guilty plea colloquy, Petitioner affirmatively responded to the judge's questions whether he understood the nature of the crimes he was charged with, the standard sentencing ranges, and that he would get mandatory deadly weapon enhancements.  (Id., Exh. 13).  Petitioner confirmed the statements in the written guilty pleadings were his. (Id.at 7-8). He denied anybody made threats or promises to induce him to plead guilty. (Id.at 7). Petitioner also made the following statement:

I just wanted to say that I feel it's vitally important that I apologize to my wife and to my family and friends for some of the people that I chose to associate with and the poor choices that I made. With great conviction, I wholeheartedly apologize to the community as well as the Court.

I would like you to know that I apologize not as a child under the punishment of authority but as a man taking authority of his punishment. I'm going to use this

REPORT AND RECOMMENDATION- 25

time to strengthen my walk with god and gain a better understanding of what makes a person such as myself fall short of what we should all know is a smarter choice and a better way of thinking. I will seek out classes, education and the church, anything that presents itself as an opportunity, an opportunity that will allow me to turn this prison sentence into a tool that may some day help others in the community, rather than just be a hindrance.

(Id., Exh. 13 at 12).

These records reflect that Petitioner made an intelligent and voluntary choice to plead guilty; that he was aware of the nature of his crimes, the recommended sentence, and that he was remorseful.

## VIII.  CONCLUSION

There is nothing in the record or the state courts' decisions to lead this Court to conclude in its independent judgment that the state courts applied Strickland incorrectly.  Petitioner demonstrates neither deficient performance nor that but for his attorney's mistakes he would not have plead guilty and would have insisted on going to trial.  Because the decision by the Washington state courts as to Petitioner's first ground for relief was neither contrary to nor an unreasonable application of clearly established federal law, the undersigned recommends that Petitioner's first claim to habeas relief be dismissed with prejudice.

The undersigned recommends that Petitioner's second and third claims for habeas relief also be dismissed with prejudice as they are unexhausted.  Petitioner failed to present these claims as federal constitutional violations at every level of state courts' review and he is now procedurally barred from presenting these claims to the Washington state courts.

A proposed Order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

REPORT AND RECOMMENDATION- 26

the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 6, 2007**, as noted in the caption.


            DATED this 6th day of March, 2007.



                                            Karen L. Strombom
                                            United States Magistrate Judge

REPORT AND RECOMMENDATION- 27